In the Matter of the Accounting of GERDA ECKERT, as Temporary Administratrix of the Estate of FRICIS VILNIS GRAUDS, Also Known as Fr. GRAUDS, an Absentee.*

In the Matter of the Accounting of GERDA ECKERT, as General · Guardian, with Limited Authority, of the Estate of FRICIS VILNIS GRAUDS, an Infant.*

Surrogate's Court, New York County, March 20, 1943.

*Edmund M. McCarthy,* special guardian for Fricis Vilnis Grauds, an absentee, Elza Grauds and others, infants, and for unborn issue, for the motion.

*Charles Recht* for Consul General of the Union of Soviet Socialist Republics and Fricis Vilnis Grauds, an absentee, Elza · Grauds and others, infants, and for unborn issue, as nationals of the U.S.S.R., in opposition to the motion.

*Robert H. Law* for Latvian Legation in Washington and Alfred Bilmanis, Envoy Extraordinary and Minister Plenipotentiary and Consul General of Latvia in the United States.

* See, also, *Matter of Grauds,* 180 Misc. 558.— [REP.

*James N. Vaughan* and *P. A. Beck* for Gerda Eckert, as general guardian and temporary administratrix.

*James L. Duncanson* and *Crawford W. Hawkins,* attorneys designated by Alien Property Custodian to represent Fricis Grauds, an absentee, Elza Grauds and others, infants, and for unborn issue, being persons within enemy-occupied territory.

*Joseph A. Cox* for James F. Egan, as Public Administrator of the County of New York.

*George F. Paverini* for Mikelis Perkons.

*Stephen S. Kent* for Irving Trust Company.

*Frederick W. McGowan* for National Surety Corporation.

*Giles F. Giovanazzi,* special guardian for Fricis Grauds, an infant.

Delehanty, S.  As early as April 23, 1942, Charles Recht, Esq., sought to interpose in a proceeding then pending on the part of the Consul General of Latvia for a decree revoking letters of temporary administration issued on the goods of Fricis Vilnis Grauds.  Mr. Recht sought to appear for Fricis Vilnis Grauds, for Latvian State Steamship Passenger & Cargo Line and for the Consul General of the U.S.S.R.  On objection the interposition of Mr. Recht for these parties was allowed only to the extent of permitting him to intervene as a friend of the court.  In connection with his desire to intervene the following colloquy occurred: " Mr. Recht: I represent the Latvian State Steamship Passenger & Cargo Line, by virtue — The Surrogate: Are you representing the Latvian Government? Mr. Recht: I represent an organization, your Honor, which is a separate entity, organized by decrees of the Soviet Government. The Surrogate: So that you are here representing really the Union of Soviet Socialist Republics. Mr. Recht: Only by virtue of its action in creating this corporate entity, which was to acquire all these vessels originally and operate them in line with its defense. The Surrogate: Wait until we be clear about this. The Government of the United States has never recognized the act of the government of Russia — Mr. Recht: That is true. The Surrogate: — in entering into the territory of the Baltic republics. Mr. Recht: That is correct. The Surrogate: It has never recognized any right whatever as inhering in the Russian Government to take any property of a citizen of any of the Baltic republics. Mr. Recht: That question, your Honor — The Surrogate: Let us see if we cannot agree on it. Is it not the case

that the Government of the United States still recognizes the Latvian Government as a separate, continuing governmental agency, antedating the invasion of Latvia by Russia? Mr. Recht: Yes. The Surrogate: Is that not true? Mr. Recht: That is true. Will your Honor hear me on that point? The Surrogate: In effect, you are saying to me that because an agency created by the Russian Government offers a claim of title to these properties, based upon its invasion of Latvia, not recognized by the United States as valid, you are entitled here to be concerned with property which concededly was property of a Latvian citizen? Mr. Recht: Yes, and so the Circuit Court of Appeals for the Second Circuit stated only two weeks ago.''

In a later hearing on June 22, 1942, the position of the court was restated and Mr. Recht's status as a friend of the court only was continued.

Later an account was filed by the temporary administrator and citations on that account were issued and made returnable in November, 1942. The parties were told in hearing on September 1, 1942, in the removal proceeding that their respective appearances would be considered on the return of the citations in the accounting proceeding if any of them sought to appear in that proceeding. On the day when the citation was returnable in the accounting proceeding Mr. Recht again sought to intervene on the basis theretofore stated by him and the following colloquy occurred: '' The Surrogate: There is no appearance by Fricis Grauds, nor by Elza Grauds. Is there any dispute by any of you that Fricis Grauds and Elza Grauds were Latvian nationals? Mr. Recht: There is, your Honor. The Surrogate: I will hear that presently, Mr. Recht. * * * The Surrogate: Now, Mr. Recht, I understand you to challenge the statement of Mr. Law that the absentee, Fricis Grauds, and Elza Grauds, his wife, are Latvian nationals. Mr. Recht: Yes, your Honor. The Surrogate: On what do you base the assertion that they are not? Mr. Recht: The situation, as we understand it, from the information that we have gotten, is, although the whereabouts of these people, the definite place, cannot be located, information has reached us that these people fled to the Soviet Union after the German invasion, and are now in the Soviet Union. The Surrogate: Do you deny that prior to the invasion, either by Russia or Germany, these persons were Latvian nationals, domiciled within the territory of Latvia? Mr. Recht: The position we take, your Honor, to answer your Honor's question, is the following: At the time of the nationalization and the joining by the Latvian Republic into the Federal Union of the Soviet

Union — The Surrogate: You do not answer my question at all. Mr. Recht: I deny both, but I was going to motivate the denial. The Surrogate: Do you deny that there was a nation called Latvia? Mr. Recht: I do not. The Surrogate: Do you deny that Fricis Grauds was a citizen of that state? Mr. Recht: I do not. The Surrogate: And that he was such citizen prior to the invasion of Latvia by Russia or Germany? Mr. Recht: If your Honor asks me that question specifically, I cannot answer it in that way. If your Honor will permit me — The Surrogate: But you have asserted a fact, to wit, non-citizenship in Latvia. Mr. Recht: May I state our position, if the Court please? The position we take is this, that this man Grauds was a citizen of Latvia. The Surrogate: Was a citizen of what? Mr. Recht: Latvia. That the Republic of Latvia joined the Federal Union of the Soviet Republic. Thereby his citizenship became one of a Soviet citizen, but that question is a separate question. Subsequent to that there was an invasion of the Latvian Republic, which was a Soviet Republic, by an enemy, Germany. The people fled from that republic to the interior of the Soviet Union. Among the millions who fled are this Grauds family. We have definite information that the family fled to the Soviet Union, into the interior, and they are being sought now and their whereabouts will soon be learned. Regardless of that fact, today there appears, on the suggestion made time and again by your Honor, the Alien Property Custodian. I went to Washington twice trying to induce the Alien Property Custodian to step in, on the following theory. If Mr. Law's theory is correct, the certificates of the State Department have no bearing on the situation, because the test of the Alien Property Custodian's interest is whether the people reside in a territory occupied by the enemy. The Surrogate: I do not think you ought to argue the Alien Property Custodian's position. I want to hear your own. Mr. Recht: I state that. Therefore, Mr. Law's position falls to the ground, and the issue is between us and the Alien Property Custodian. If it can be proved that these people are now in enemy-occupied territory, then clearly the Alien Property Custodian would have some jurisdiction in the case. If later on it should be proved that they fled into the interior of the Soviet Union and continued their Soviet citizenship, then it is not the Latvian Consul who should appear, but the Soviet Consul, for whom I have the honor to appear before your Honor. That is our position. The Surrogate: Is it not the declared policy of this nation that no invasions of friendly countries will be recognized by our government? No *de facto* governments over terri-

tory of friendly nations will be recognized? Is that not our policy? Mr. Recht: That is true. That is the policy, but that policy is not material to the issue before your Honor. The policy is something quite different. If we were coming here and trying to argue with Mr. Law, under normal conditions, whether Latvia, which no longer exists, still existed, that would be one thing, but when we are dealing with facts, the fact whether this man lives in any occupied territory or in a friendly territory, then the question of the policy of this government is not involved. If these people, as we contend, are now in the Soviet Union and are Soviet citizens, then, of course, they are represented by us. If they are not, then the gentleman on my left, Mr. Hawkins, and Mr. Duncanson are the proper persons to step into this picture. The Surrogate: I think, as far as you and Mr. Law are concerned, that the burden is on you to establish the adoption of Soviet nationality by this absentee, and the burden is on you to show that, in view of your concession that the absentee was at one time a Latvian citizen. Mr. Recht: Yes, but his citizenship changed into that of a Soviet citizen. The Surrogate: Did he change it? Mr. Recht: Yes, sir. Mr. Law: That must be proved. The Surrogate: The absentee? Mr. Recht: By operation of law. When his Republic joined the Federal Union — The Surrogate: That, I say, is a matter of fact, in respect of which the burden is on you. *Prima facie* I will take the appearance of Mr. Law for the adult Latvian citizens.''

In order to present the question in a form which would permit a review the court authorized Mr. Recht in the accounting proceeding to submit a notice of appearance for the persons whom he claimed to represent and who he said were interested parties; but the permission to file his appearance was conditioned upon the right of any other party in interest to move to strike it out. Such a motion has now been made by the special guardian appointed by the court. That motion is concurred in by the special guardian for the infant son of deceased who was appointed at the instance of such infant and is concurred in also by the Consul General of Latvia who is here represented by Mr. Law. The motion focuses the question whether or not the Consul General of the U.S.S.R. can appear for persons who, as the foregoing excerpts show, were concededly citizens of the independent State of Latvia prior to its invasion by Russia.

Our government has pursued the consistent governmental policy of denying validity to the acquisition of territory or ostensible sovereignty acquired by forcible dispossession of the

governments created by the people of invaded territories. Our government has continued to recognize and still recognizes as a valid subsisting government the Republic of Latvia and the diplomatic officers accredited to this country by that government. So long as that recognition continues and so long as it remains our governmental policy to deny recognition to forcible occupations of countries with which this country is at peace, the right of the original government of any seized territory to protect the interests of its nationals must be recognized by the courts (*The Signe*, 37 F. Supp. 819, 39 F. Supp. 810, affd. *sub nom. The Florida*, 133 F 2d 719).

The foregoing discussion presupposes that there exists otherwise in the record a basis upon which Mr. Recht's appearance could be approved. But in fact his right to appear lacks all authenticity so far as the Latvian nationals are concerned. So far as the record shows there exists no proof that any of them has given him any authority to act. There is entire failure of even an attempted showing of such authority on the part of three of the four individuals. In respect of Fricis Grauds there is an attempt by presenting copies of alleged cables which show some communication to Mr. Recht through Amtorg, a trading agency of the Soviet Government. These papers establish nothing whatever on which a court would be warranted in acting. For that reason alone Mr. Recht's appearance for the individuals would have to be stricken. There is no proof whatever in the record that any of the individuals have in fact assumed Russian citizenship. The court is bound to assume that they have continued to remain citizens of the Republic of Latvia with which this country has a Treaty of Friendship, Commerce and Consular Rights.

Accordingly and for all the reasons stated the motions are in all respects granted. The notice of appearance of Charles Recht, Esq., in behalf of the Consul General of the Union of Soviet Socialist Republics, Fricis Vilnis Grauds, also known as Fr. Grauds, Elza Grauds, Gunar Grauds and Rosalie Grauds, is stricken out and the objections to the accounts filed by Mr. Recht in behalf of the same persons are dismissed.

Submit, on notice, orders accordingly.